The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Christopher Cantwell, appeal number 21-1186. Attorney DeMaso, please introduce yourself for the record to proceed with your argument. Good morning and may it please the court. I'm Chrissy DeMaso and I represent Christopher Cantwell. I'd like to reserve one minute for rebuttal. You may. Angry, offensive, frustrated words alone are not criminal extortionate threats. Which side of the line a statement falls on depends a lot on context. Who was talking, to whom they were talking, what their relationship was. The defense here hinged on context, including deliberate provocation. Mr. Cantwell and Mr. Lambert were members of online extremist white nationalist communities. They joined and participated in those communities voluntarily. Mr. Lambert's group of extremists had made it its mission to anger and harass Mr. Cantwell because it believed that he had sold out, that he had shifted his ideology and was simply acting for financial gain. They made prank calls and disrupted his website. Mr. Cantwell argued that given the norms of this community and the fact that Mr. Lambert and the ball patrol had been deliberately harassing him for months, the government did not prove that he made threats or intended to extort. The court's anti-provocation instruction, which was given over objection, tended to confuse and mislead the jury and infringed on Mr. Cantwell's right to present this proper elements-based defense. The court described the anti-provocation instruction as necessary to alleviate confusion. However, it had the opposite effect. It introduced and created confusion that was not otherwise present. The defense never suggested to the jury and affirmative defense that it could acquit Mr. Cantwell if it found that the government had proved all the elements, only the instruction- in the event that the defendant actually makes the defense of the kind you say was not made? I don't have a case that specifically says that, but I think that part of the problem here- Is that the logical end point of your position? That in other words, unless the defense is made- I guess I just don't understand what your legal rule that you want us to adopt is. I take it it's an abusive discretion standard? Yes, your honor. So we're supposed to- I mean, it's just a matter- On this record, you're supposed to reevaluate the predictive assessment about confusion one way or the other. That's what the case hinges on? Or is there something more to it? I think there's more to it. I think that what's critical in this case is that there was an elements-based defense that involved provocation. And if you look at the suggested instruction that the defense gave the judge- The defense said, we don't want any provocation instruction. There should be no word about it. And the court pushed for suggested instructions. And the suggestion included a line that said, evidence of provocation may be relied upon by you to determine whether the government has met its burden- to prove beyond a reasonable doubt every element of the charges in the case. So the suggestion explicitly told the jury, you may consider this provocation evidence when you are deciding if the government has met the elements. So that- You know, I think that the best- Our best argument- Are you objecting to the failure to give an instruction? Or are you objecting to the instruction given? To both, your honor. We're objecting that there was any instruction given. We think that no instruction should have been given. But if one was going to- In your brief, though, I didn't think that the challenge concerned the instruction not given. I thought it was just the instruction that was given. It is, but I'm- So I guess I'm just trying to say- So what in the words of the instruction given are problematic? Is it just an omission? So there's an omission, but there's a difference, right? So in the actual instruction, the court talks about what you can consider it for. And it talks about you may consider it for all of the circumstances surrounding the making of communications. And then lists some examples, none of which are intent or, you know, it being a threat. It doesn't tie explicitly back to the elements. And then the court says you may not consider this evidence for any other purpose. Was the challenge below to the wording of this instruction or to the giving of any instruction? So I'm just wondering what's on appeal, what you're actually appealing. So the challenge below, it went back and forth. The government- I mean, sorry, the government. The government did ask for such an instruction. But the court said it was going to give a very short anti-provocation instruction. Five minutes. The defense objected to any provocation instruction being given. And the court then pushed for suggestions. And is that the ruling, the giving of any instruction? That's how I understood the brief to read. It doesn't matter what the instruction particularly said. It was any provocation instruction is what the objection was to. That is what the objection was to. I'm talking- I'm just trying to figure out what are the boundaries of that rule that you're asking for because is the idea that it just- I mean, just help me out. What was the idea? There's clearly some idea of provocation lurking here. The concern was that it was kind of self-defense or type of defense was being in the background. And since that wasn't being made, the judge wanted to make sure that the jury didn't think it was being made because that would not have been a permissible ground for resolving the case. That seems, in principle, clarifying rather than confusing. So I guess how are we supposed to conclude that it's an abuse of discretion nonetheless to give it? I think the problem here is how much provocation was intertwined with a proper evidence-based- excuse me, elements-based defense. You know, there was- it is a proper elements-based defense here to say because I had these feelings, because we used this language in this community, because this is what was going on, the government cannot prove that I had the intent to extort, that I intended to make threats. So in that type of case where that- where provocation is actually the heart of the defense- and I, you know, I analogize to cases that talk about theory of defense instructions, like, you know, Perez Rodriguez and Baird and Montanez, and the idea being that- for being concerned about it, much more than the giving of the instruction at all. Yes, and I do think that it's, you know, the- Mr. Cantwell made specific requests that were not given. So I do think that it is still relevant and preserved to look at what they were suggesting as better, even if their ultimate- the ultimate argument is nothing would have been good enough because it's so intertwined with our theory of defense here, that talking about provocation as not being- somehow not being permissible to consider was going to confuse the jury about what the true heart of the defense was here. And it essentially took that talking about provocation when there was no- there was no reason to believe the jury was confused. You know, the closing and opening were closely tied to the elements. Counsel, before you sit down, I'd like to ask you about your closing argument issue, the hearsay issue as you characterize it. I'd like you to explain to me why there was any error at all on the part of the government when it referred in closing argument to Ms. Frey's statement. I put the question to you that way because when the statement was first admitted, there was not a word about hearsay. Hearsay was never mentioned when the closing argument was given. But I think the government correctly points out that we have precedent for the proposition that if evidence is admitted, even if it's hearsay evidence, but it's admitted without any limitation as to how it can be used, the jury can then consider it for any purpose. If that is our precedent, I'd like you to explain to me what was the error here when the government, understanding apparently that there was no limitation on the way in which that evidence can be used, referred to it in closing argument. Where is the error in that scenario? I think the important piece here is to look at the context in which this evidence was admitted. This is not a case where the government, in the middle of an examination, simply pressed play on a recording and there was no discussion of it whatsoever, and it just came in, and no one talked about it and no one said any word about it. There's extensive discussion about how this is coming in, and in the course of that discussion it becomes clear the context of the admission of these statements, and the context is related. Extensive conversation at the time that it initially comes in from the course of the trial. That's what you're referring to, that elaborate discussion of completeness? Is that what you're referring to? Yes, and specifically I'd point to when the government, it's on page 204 of the Joint Appendix, talks about, and they're combating Mr. Cantwell's argument about completeness and saying 801 specifically defines something as not hearsay, as a party statement used against the party, and we don't intend to use those portions against Mr. Cantwell. So the government is recognizing that this is all about 801D2, and where this comes in under 801D2, those parameters are in play, even at closing, even without an objection saying this is 801D2. Before you end, just on that point, if the admission was only to provide the context of completeness for the conversation, isn't technically the reference in the closing argument accurate then? The government has never contended that it was using her statement in closing for anything other than its truth, but has it conceded it was using it for its truth? I thought literally what it says is you heard her response, but that's literally what it was admitted for, was to provide completeness. What's wrong with that statement? I think, again, it comes down to context, where the government has just played the tape and is putting her in a paragraph with other witnesses who did testify. Maybe just I'll be more direct one last time. If evidence is admitted to provide completeness for a conversation and the prosecutor says you just heard the other side for completeness, how could that be error for the prosecutor to say that? That's literally what it was put in for. I'm not saying there's no answer to that, but I just want to hear what the answer is. I think it's clear in the context of the government's closing that they were not simply saying we played a tape for you that contained words Ms. Frey said. They were saying just like you heard Mr. Nalen's opinion and Mr. Lambert's opinion, you heard Ms. Frey's words and you know that she believed that this was a threat. That is why they said that sentence, and that is what they were arguing there. So that's viewed in that way. It's being admitted, to use the formulation, for the truth of the matter asserted. In making that statement, she understood that it was a real threat. That's what the government is trying to convey. They are using her language to drive home their point that just as Mr. Lambert and Mr. Nalen perceived it to be a real threat, she, who knows him very well, also perceived it to be a real threat. That's why, from your point of view, it was so problematic. Is that correct? That's correct, Your Honor. Was there an objection at the time that was made? I forget. To the closing? Yeah. No, there was not. It is on plain error. We're on plain error on that, yeah. Okay, I have one very short question. It's regarding the sentence. And I just want, Counselor, if you could make it clear. Did you ask for a downward departure under 5K2.10, or were you requesting a variance? Because I'm looking at both briefs and they sometimes would say a variance, other times a departure. It appears to me it was a departure that was requested on behalf of your client. Yes, Your Honor. We requested a downward departure under 5K2.10. Okay, thank you. Thank you. Thank you, Judge. At this time, would Attorney DeMaso please mute your audio and video? Attorney Krasinski, please introduce yourself on the record to begin. Good morning. Anna Krasinski on behalf of the government. May it please the Court. I want to first address the issue of whether or not it was error at all for the government to mention those nine words, and you've heard Ms. Fry's reaction to it in closing. And the sort of crux of my colleague's argument is that this was sort of an implied limitation. It was never discussed, but it was implied. And I think the big problem with that argument is that I can imagine a situation where there's a recording and there's a statement that could technically be hearsay and admitted for context only, but is ultimately something that the defendant would like to argue the truth of the matter of at closing and so doesn't object, and then in closing they argue it. And so in a case where there's no discussion before the jury or outside the presence of the jury about how those statements are going to be admitted and it's never clearly admitted under a particular rule, it's hard for this sort of implied limiting instruction or sort of everybody knew that it was admitted this way to be a practical rule. Are you agreeing then it was used for the truth in the closing? I think my colleague's argument about the context in which it was used is fair. It was in a brief portion of the closing. So your position is that when they admitted it for completeness, they admitted it for the truth? My position is that when it was admitted, ultimately at trial, the entire recording was admitted and those statements were admitted for their truth, yes, your honor. What would you point to that suggests it was admitted for their truth when there was that discussion in which it was, I thought, pretty clearly admitted for completeness? So there was never a discussion about how Ms. Fry's statements would be admitted, ever, at any point in the record. What there is a discussion of is what portions of Mr. Cantwell's statements should be admitted under the rule of completeness and that's all that discussion was. Never once on the record in any of the discussions about what portions, what additional portions should be admitted to the government's proposed trial excerpts. I thought your argument was, based on your brief, that yes, the whole discussion was about completeness. But since there was no reference at all to hearsay, no limit, although it was admitted for completeness to meet the completeness requirement of the rules of evidence, there was no limitation placed upon how it could be used by the government or considered by the jury. I think this is your position, that even if at closing, I guess you were the prosecutor, right? You tried it. Even if in your mind, you could say to yourself, well, there's no limitation on how I can use this. I can argue to the jury that they should consider this statement for the truth of the matter asserted. That truth being that she, like Nail and the other gentlemen, thought this was a real threat. You were entitled to make that kind of argument. It seems to me that is what you were arguing. You're not suggesting that was not – that you did not use that in a hearsay fashion, but you thought you could do it. That's what I think you're – that's what I understand you would be arguing. That's correct, Your Honor. So, okay. So, you knew it was hearsay, but you thought it was fair game to use it as hearsay. Is that your position? I think it is technically hearsay. I think it was generally admitted. And so, yes, that it could be used for the truth of the matter asserted because it was admitted that way, Your Honor. Does that turn on how we understand the rule of completeness? In other words, when something is admitted to provide the context and completeness in the conversation, is that generally understood to be therefore it's admitted for the truth as opposed to be admitted just for the purpose of ensuring that you can understand the context in which the statements that primarily are being introduced is for? Your Honor, the discussion about what should be admitted under the rule of completeness was not Ms. Fry's statement. The discussion about what should be admitted under the rule of completeness were different portions of that recording. How did Ms. Fry's statement come in on your account? When the government moved to admit that particular piece of evidence, the court admitted it. There was no discussion of any rule that it was admitted under. When it was admitted, it was admitted without any objection. And so the government's position is that the entire recording was generally admitted. And then the conversation about completeness concerned only how many of Cantwell's statements would be admitted? So, what happened was the government proposed various segments of this longer call. And the defendant wanted additional portions of his own statements, additional portions of the conversation between him and Ms. Fry to be included in those recordings. And so ultimately we expanded the clips based on the court's rulings. Was that discussion of the clips, was it exclusively focused on the words being uttered by Cantwell? Or was it the conversation as a whole of which Ms. Fry was a part? I think the conversation as a whole, but the discussion of 801, fell within a discussion about which portions of Mr. Cantwell's statements should or should not be admitted under the rule of completeness. And balancing whether or not his statements provided sort of a fuller... But if that was in the context of a clip from the conversation and one of the additional Cantwell statements that was being talked about was being discussed jointly with the response to it by Ms. Fry, doesn't that seem a little bit of a distorted picture of what happened, or am I wrong? The precise statement we're talking about here by Ms. Fry only comes in in the context, I think, of a discussion of the rule of completeness as to the statement Cantwell says preceding it that would lead to her response. Is that correct? I think that's fair, had there been any type of limitation placed on it, Your Honor. And I think the way to have done that would... My colleague says that they didn't want to provide a limiting instruction to the jury because they didn't want to highlight this to the jury. And I don't think one was necessary, but there was plenty of time in this discussion about it outside the presence of the jury when there could have been that brief discussion. Your Honor, we understand that these are coming in for context only. We are not going to request a limiting instruction for this reason, but we're not objecting to them as long as they're introduced for this limited purpose only. That never happened. Well, the judge hearing this, I think he describes it as sort of an Alice in Wonderland quality to all of this because it seems that it's the defense that's pushing for more and more of this conversation to come in. And the government is trying to limit it. The government wanted to limit it because in this long exchange, the government thinks there are a lot of self-serving statements by Mr. Cantwell that from the government's point of view are objectionable. That seems to be the debate, you know, how much more of Mr. Cantwell's statement should come in. There's really no specific attention played to Ms. Fry's statement, as I recall. That's sort of, it's really a secondary issue. It's much more how much more of Mr. Cantwell's statement should come in. And that's where the judge imposes the limitation. Isn't that correct? That's correct, Your Honor. And, in fact, not once at any part during the trial was there ever a discussion of Ms. Fry's statements at all between the parties and the court. It simply wasn't discussed. And I would say that even if it was error to include that in the closing, I don't think that the defendant can meet the plain error standard here. My colleague focuses on the fact that the only other people within this white nationalist community who testified that it was a threat were biased in some way. But I think that the strongest evidence that someone within this community believed these words to be threatening came from Mr. Cantwell himself. And that was the strongest evidence that these were threatening. That's time. Could you just briefly address the provocation instruction? Of course. I think my colleague's brief inherently recognizes the dual nature of this provocation evidence. It is both something that I believe can be appropriately used for the jury in determining whether or not Mr. Cantwell had the intent or whether or not this statement really expressed a serious intent to injure. And that's appropriate and a fine way to use this evidence. But I think there's also this acknowledgment that it can be used in an improper way. That is, they pushed me to do it. I did it, but I'm not guilty because they did it first. And that's why Mr. Cantwell asked for a downward departure based on this same evidence. And so I think when you have evidence that without instruction, a jury really could look at in both ways, the judge did exactly what we would want a judge to do here. And that is tell the jury how they can properly use it. And also tell the jury how they're not allowed to consider it. And the instruction actually links directly to the court's instruction about what an intent to extort means. And so the same examples that the court uses in this provocation instruction link directly to what it means to intent to extort, which includes, based on this court's instructions, an intent to threaten. The court was awfully quick to decide that it was going to have to give this provocation instruction. I mean, it just simply heard the opening statement and then announced that I'm going to have to give this instruction. Why would it have been sensible to see how it really plays out? I mean, an opening statement is oftentimes a very reliable indicator of how the provocative stuff is going to play out. But the judge heard the opening statement and announced that I'm going to do this. And that's a pretty big deal to give this provocation instruction for some of the reasons that defense counsel stated. Wasn't the judge premature in making this? I'm going to do this just on the basis of the opening statement. So I don't believe so. The second sentence in the opening statement included the word provoke. It was, Chris had been pushed, taunted, and harassed for months to make him angry, to wind him up, to provoke a bigger and bolder response. I mean, that was the second word in the opening statement. And then the entire defense included all of these things that, you know, essentially made Mr. Cantwell angry. But that's part of an attempt to try to argue that the government has not proven beyond a reasonable doubt the requisite intent. You have to look at the way in which he was provoked. This was an exchange in anger. This was not an intent to extort. This was just a man responding to understandable provocation. But to jump to the conclusion that that is a formal provocation defense with all of the complexity that that involves, you know, these affirmative defenses, that seemed to be an awfully quick judgment to make. I think, Your Honor, that what you said actually gets to the heart of this issue, responding to this provocation. And a jury could understand the opening statement and say, and all of the evidence presented, he was angry. He was responding to this provocation. But even overwhelming righteous anger is not a defense in and of itself. If all of the other elements are satisfied, just the fact that he was angry isn't enough. People commit crimes out of anger all of the time. So it's not, was he angry? It's not, was he pushed so far that he was so mad? It's in the context of the way that these two people communicate. You know, they do spew hateful things. Could these specific words be viewed as a threat? And I think there was an appropriate defense. The problem is that the jury could look at that evidence both ways. Maybe just one more sentence, because we're pretty far past time. And so I think because of the way, the dual nature in which a jury could consider that evidence, the judge did not have used its discretion here. Thank you. Just one very quick question. I'll be as quick as possible. I'm going to go directly to the sentencing phase. What was requested in sentencing was a downward departure on guideline section based on 5K2.10. I'm looking at the sentence in transcript, and the judge below denied, but he's talking about a variance. I'm not sure he addresses the six factors within the guideline for denying, but he does thoroughly explain why he's denying a variance. My question to you is, is that denial of the variance sufficient, even though he doesn't mention the guideline itself, to affirm the sentence? Or is there a procedural reasonableness issue that would warrant a remand simply for resentencing, assuming you prevail on the other arguments? I don't believe there's a procedural issue here, because it's clear from the record that the court very thoughtfully considered whether or not the victim's wrongful conduct contributed to provoking Mr. Cantwell's offensive behavior. It sifted through all of the evidence to determine what was and was not attributable to Mr. Lambert himself. The court then found, essentially, what was directly attributable to Mr. Lambert to be pretty limited and not sufficient to be provocation under 5K2.10. And then, ultimately, the court gave him credit for this by imposing a lower sentence than he otherwise would have. Okay, thank you. Counsel, very quickly, is it correct that Mr. Lambert, when he entered this chat room, he didn't even know that Cantwell was there? Is that correct? I mean, Cantwell became aware of his presence. Lambert had no idea that Cantwell was there. Is that correct? There's conflicting testimony on that, Your Honor. Mr. Lambert testified that he did not know Mr. Cantwell was there. Mr. Cantwell testified that he believed Mr. Lambert did know that it was his chat room. Okay, thank you. Attorney Krasinski, if you could please mute your audio and video at this time. Attorney DeMasso, if you could reintroduce yourself on the record to begin. Chrissy DeMasso for Christopher Cantwell. I think you have one minute. Thank you. I have two quick points. The first is on the 801D2 issue. I think the government here has admitted that this evidence came in under the parameters of 801D2. And whether or not those words were spoken out loud, this was a trial. Things happen fast, they move fast, and people operate based on context and what's going on. I'd look at Hudson for that, talking about what you have to look at what was happening. Both parties and the court knew how these statements were coming in, and that limited use should have carried through to closing. When it comes to the instruction issue, the government acknowledged that there was an appropriate elements-based defense here and said that this evidence could also be used improperly. It does not point to any place where Mr. Cantwell suggested an improper affirmative defense. And to argue that the jury somehow would have inferred out of thin air that there was an affirmative provocation defense that required Mr. Cantwell to prove things by a pretense and take it into its own hands to use such a defense is simply implausible. And an instruction was not necessary here. Thank you. Thank you. That concludes argument in this case. Attorney DeMazzo and Attorney Krasinski, you should disconnect from the hearing at this time.